UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICK CUSUMANO,                    )
                                  )
        Petitioner,               )
                                  )
    vs.                           )        Case No. 4:17 CV 291 JMB
                                  )
BILL STANGE,[1]                   )
                                  )
        Respondent.               )

## MEMORANDUM AND ORDER

This matter is before the Court on a pro se petition of Rick Cusumano ("Petitioner").  (ECF No. 1)  Petitioner is a Missouri State prisoner seeking a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, for relief from a January 4, 2011, conviction and sentence.  Respondent argues that Petitioner's claims are without merit.  The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I.    Procedural and Factual Background

### A.   Procedural Background

Petitioner is serving a life sentence at the Potosi Correctional Center, having been convicted of aggravated forcible rape following a jury trial in January 2011, in the Circuit Court of St. Louis County.  The procedural background of this case is complicated and stems from a 1988 sexual assault that was charged in 2010.  The case involves an overlapping sequence of an

---

[1] Petitioner is incarcerated at Potosi Correctional Center ("PCC").  When Petitioner filed this action Cindy Griffith was the Warden at PCC.  Bill Stange is the current Warden at PCC.  See Missouri Dep't Corr. Warden Listing, http://doc.mo.gov/DAI/Warden_Listings.pho (last visited February 17, 2020).  Consequently, the Court will direct the Clerk to substitute Bill Stange as the respondent in this action.  See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Notes.

initial trial, two retrials (each involving different but related charges), two post-conviction motions, and several appeals.

### 1. Original Charges – February 2010

In February 2010, Petitioner was charged in St. Louis County, MO, with three felonies related to an August 5, 1988, sexual assault of a woman referred to herein as "Victim."  (ECF No. 14-3 at 13-15)   Count I charged that Petitioner, while acting with another, committed forcible sexual intercourse with Victim without her consent and displayed a deadly weapon in a threatening manner.  Count II charged Petitioner with forcible rape by subjecting Victim to sexual intercourse, but it alternatively charged that, if Petitioner did not display a deadly weapon in a threatening manner, he committed the offense by subjecting Victim to sexual intercourse with more than one person.  Count III charged Petitioner with aggravated forcible sodomy.  (Id. at 15-17)

### 2. First Trial – September 2010

On September 22, 2010, a jury found Petitioner guilty of forcible rape and forcible sodomy, which were lesser included offenses of the aggravated conduct charged in Counts I and III.  The jury failed to reach a verdict on Count II—forcible rape by subjecting Victim to sexual intercourse with more than one person.[2]  The trial court declared a mistrial as to Count II and sentenced Petitioner as a prior offender to two concurrent life terms on Counts I and III.  (ECF 14-3 at 60-63)  The Missouri Court of Appeals affirmed those convictions.  State v. Cusumano, 358 S.W.3d 137 (Mo. Ct. App. 2011) (per curiam).

After losing his direct appeal, Petitioner filed a Rule 29.15 motion for post-conviction relief.  Petitioner's primary argument was that his trial counsel rendered ineffective assistance by

---

[2] Defense counsel submitted lesser included offense instructions for Counts I and III but not for Count II.

submitting lesser included instructions that waived a statute of limitations defense. The motion court held an evidentiary hearing and denied relief. Petitioner appealed the denial of his Rule 29.15 motion and the Missouri Court of Appeals reversed the motion court and remanded the matter for a retrial of Counts I and III. See Cusumano v. State, 494 S.W.3d 652, 654 (Mo. Ct. App. 2016).

### 3. Retrial of Count II After Mistrial – January 2011

In January 2011, while the direct appeal process was playing out relative to Petitioner's convictions on Counts I and III,[3] Petitioner was retried on Count II, the count for which the original jury could not reach a verdict. The jury found Petitioner guilty and he was sentenced to another life term, to be served consecutive to the prior sentences for Counts I and III.

Petitioner appealed his conviction on Count II, raising two points. See State v. Cusumano, 399 S.W.3d 909, 914, 916 (Mo. Ct. App. 2013). For his first point, Petitioner raised a double jeopardy claim, arguing that the trial court plainly erred by allowing the State to retry him on Count II.[4] For his second point, Petitioner argued that the trial court plainly erred in admitting victim

---

[3] This was also well before Petitioner filed his initial Rule 29.15 motion.

[4] The Missouri Court of Appeals explained that Counts I and II both charged aggravated forcible rape, in violation of Mo.Rev.Stat. §§ 556.030.2, 556.060.2. Cusumano, 399 S.W.3d at 911. Aggravated forcible rape is a Class A felony and a greater offense of the unclassified felony of forcible rape. The Missouri Court of Appeals further explained that, at the time, Missouri law provided at least two ways to commit an aggravated forcible rape. One required proof that the defendant displayed a deadly weapon in a threatening manner. While another required that the victim be subjected to "deviate sexual intercourse or sexual intercourse with more than one person." Id. (internal quotations and citation omitted). In a later decision, the Missouri Court of Appeals also explained the distinction between Count I and Count II as follows: "Count II also charged [Petitioner] with [aggravated] forcible rape, but while the charging document restated the allegations in Count I, it alternatively charged that if [Petitioner] did not display a deadly weapon in a threatening manner, then he committed the offense by subjecting the Victim to sexual intercourse with more than one person." Cusumano v. State, 495 S.W.3d 231, 234 (Mo. Ct. App. 2016) (affirming denial of Rule 29.15 motion following conviction on Count II).

impact testimony during the guilt phase of his trial.  Petitioner conceded that he failed to preserve either point for appeal.  As such, the Missouri Court of Appeals reviewed the issues for plain error only and affirmed his conviction.  <u>See</u> <u>Cusumano</u>, 399 S.W.3d at 914, 916, 918.

After losing the direct appeal of his conviction on Count II, Petitioner filed a Rule 29.15 motion for post-conviction relief, alleging the following four grounds of ineffective assistance of counsel:[5]  (1) failure to investigate and call potential witness Detective Gary Fourtney; (2) failure to object to victim impact testimony; (3) erroneously advising Petitioner not to testify at the retrial of Count II; and (4) ineffective assistance of appellate counsel in failing to cite relevant United States Supreme Court cases in support of his double jeopardy argument on direct appeal.

The Rule 29.15 motion court granted Petitioner's request for a hearing and scheduled a telephone deposition of Petitioner and an evidentiary hearing.  (<u>Id.</u> at 93)  During his telephone deposition on June 12, 2014, Petitioner testified that, had trial counsel not persuaded him otherwise, he would have testified at his retrial on Count II and the outcome of that trial would have been different.  Petitioner opined that his testimony would have been substantially the same as his testimony at his first trial, except that he would not have opened the door to bad character evidence and he would have admitted to having a prior suspended imposition of sentence on direct examination, thereby foreclosing the prosecutor's attacks of his character on cross-examination and in closing argument.  (ECF 14-7)

Detective Gary Fourtney testified at the Rule 29.15 evidentiary hearing.  Det. Fourtney explained that he remembered the case and talking to Victim, but that he would have to review the police report because he did not remember specifics, only the investigation in general.  (ECF No.

---

[5] Petitioner filed his initial Rule 29.15 motion <u>pro se</u>.  The motion court appointed post-conviction counsel who filed an amended Rule 29.15 motion.

14-9 at 31)  Det. Fourtney testified that he interviewed Victim twice on the evening of the sexual assault—briefly at the police station followed by a more in-depth interview after Victim had been examined at a hospital.  (Id. at 34, 37)[6]  Det. Fourtney explained that, had he been called as a witness at Petitioner's trial, he would have had to rely on his report to refresh his recollection of the events that happened so many years earlier.  (See id. at 27, 31, 44-45)  He further testified that his report only paraphrased what Victim told him.  (Id. at 28-29)

Petitioner's trial counsel for the first and second trials also testified at the Rule 29.15 evidentiary hearing.  Trial counsel testified that he had been retained by Petitioner and he had reviewed the discovery, including the police reports, with Petitioner.  (Id. at 46-47, 66)  Trial counsel testified that Petitioner asked him to talk to Det. Fourtney.  Trial counsel explained that he never subpoenaed or talked to Det. Fourtney because he lacked the resources to hire an investigator or depose the detective.  (Id. at 63)  Trial counsel testified that he explained to Petitioner that he needed funds to pay for things like depositions, and further told Petitioner that he was not going to depose Det. Fourtney due to a lack of funds to pay for a deposition.[7]  (Id. at 77-78)  Trial counsel further explained that, he "would never consider calling a police officer as a witness for a defendant in a criminal case without having deposed [him] or having an investigator speak with [him]."  (Id. )  Trial counsel testified that, had he deposed Det. Fourtney, he would have considered calling him at trial depending on what he said during the deposition.  Id. at 63-64)

Regarding whether he thought it would have been material to depose Det. Fourtney, counsel explained that "[m]y belief was that he was a retired St. Louis County police officer who

---

[6] A patrol officer also conducted an initial interview of Victim prior to Det. Fourtney's involvement.  (ECF No. 14-9 at 35)

[7] The lack of funds to pay expenses did not exclude all depositions.  Trial counsel testified that he deposed Victim and he believed that he paid that expense himself.  (ECF No. 14-9 at 64, 78)

[Petitioner] wanted to call to testify for him on a 20-year-old case where they had Rick's DNA. I don't know what Fourtney would have said for sure. Would I have been curious in deposing him? Yes. But do I believe that he would have provided any evidence to help Rick? No, I don't." (<u>Id.</u> at 65) Trial counsel testified that he did not believe that Det. Fourtney would provide any evidence that would have helped Petitioner. Specifically, counsel indicated that it was a matter of trial strategy not to have Det. Fourtney testify because it was more probable he "would have been pro prosecution as opposed to pro [Petitioner], and that to put more evidence on that he did something wrong could have made the case even worse." (<u>Id.</u> at 79) Trial counsel also testified that he explained to Petitioner his reasons for not calling Det. Fourtney as a trial witness. (<u>Id.</u> at 65)

Trial counsel also testified at the Rule 29.15 evidentiary regarding Petitioner's decision not to testify at the retrial on Count II. Trial counsel testified that he did not want Petitioner to testify at his first trial or at the retrial of Count II. Trial counsel explained that Petitioner testified at his first trial, over counsel's advice, and it did not go well. (<u>See</u>, <u>e.g.</u>, <u>id.</u> at 70-71, 74, 89, 90) Trial counsel further testified that he advised Petitioner that "any statements he made could be used against [Petitioner] if there was a new trial granted [on Counts I and III] based on the appeal [that was then pending]." (<u>Id.</u> at 73) Trial counsel described his strategy regarding Petitioner's testimony at the retrial of Count II as follows: "Because I saw [Petitioner] testify at the first trial and because … if he would have made any statements that [differed] from his testimony at the first trial, it would have been used against him." (<u>Id.</u> at 74) Trial counsel further testified that he explained his strategy to Petitioner and he never told Petitioner that Petitioner could not testify. (<u>Id.</u> at 89) Finally, trial counsel testified that it was Petitioner's decision not to testify after counsel discussed "the pro's and con's" with Petitioner. (<u>Id.</u>)

Petitioner had a public defender assist him with the direct appeal of his conviction after the retrial on Count II.  Appellate counsel testified at the Rule 29.15 hearing that she believed the two points she raised on appeal were the best points.  (ECF No. 14-9 at 10-11)

The 29.15 court denied relief (ECF No. 14-8 at 34-53) and Petitioner appealed, raising the same ineffective assistance of counsel issues.  On August 2, 2016, the Missouri Court of Appeals issued a written decision affirming the Rule 29.15 motion court's denial of post-conviction relief.  See Cusumano v. State, 495 S.W.3d 231 (Mo Ct. App. 2016).[8]

### 4.      Federal Habeas Petition

On January 25, 2017, Petitioner filed the instant § 2254 petition which challenges only his conviction and sentence following his retrial on Count II.  His petition as filed raises essentially the same four grounds for relief he raised in his Rule 29.15 motion, namely:  (1) ineffective assistance of trial counsel for failing to investigate and call Det. Fourtney; (2) ineffective assistance of trial counsel for failing to object to Victim's former husband's testimony; (3) ineffective assistance of trial counsel for advising Petitioner not to testify at his retrial on Count II; and (4) ineffective assistance of appellate counsel for failing to cite two Supreme Court decisions in support of his double jeopardy claim.  (ECF No. 1)  Petitioner did not raise any challenges concerning Counts I and III.

### 5.      Retrial of Counts I and III After Remand – September 2018

In September 2018, while the instant federal habeas petition was pending in our Court, Petitioner was retried in St. Louis County on Counts I and III following the above-referenced remand from the Missouri Court of Appeals.  Det. Fourtney was called and testified at the retrial

---

[8] This decision was issued the same day that the Court of Appeals granted relief on Petitioner's claim that he received ineffective assistance of trial counsel relative to his convictions on Counts I and III.  Cusumano v. State, 494 S.W.3d 652 (Mo. Ct. App. 2016) (discussed above).

of Counts I and III. Petitioner was acquitted on both counts. See State v. Cusumano, Missouri

Case.net, No. 10SL-CR00041-2 (21st Jud. Cir. Sept. 21, 2018).

> **6.** **Procedural History of Instant Federal Habeas Case Following Retrial of Counts I and III**

In January 2019, after his retrial and acquittal on Counts I and III in September 2018,

Petitioner filed a Motion to Accept Supplement to 2254 Writ of Habeas Corpus ("Motion to

Accept Supplement"). (ECF No. 19). In his Motion to Accept Supplement, Petitioner addressed

five grounds for relief. First, he supplemented his arguments regarding trial counsel's failure to

investigate and call Det. Fourtney at his January 2011 retrial of Count II. The essence of

Petitioner's supplemental argument was that, Det. Fourtney testified at his retrial of Counts I and

III and he was found not guilty. Thus, Det. Fourtney's testimony impeached Victim and

established a viable defense which demonstrated his prior trial attorney's ineffectiveness. (See

ECF No. 19 at 6) Second, Petitioner argued that his 2011 conviction on Count II should be

vacated under the doctrine of collateral estoppel in view of his 2018 acquittals on Counts I and

III. Third, Petitioner argued that his conviction on Count II must be vacated pursuant to

Missouri law—Mo.Rev.Stat. § 532.430. Fourth, Petitioner argued that his conviction on Count

II was tainted by structural error because his trial counsel failed to call Det. Fourtney as a witness

and because trial counsel advised Petitioner not to testify. Fifth, Petitioner argued that his trial

counsel admitted his guilt during closing argument. Respondent argued that each of the grounds

raised in Petitioner's Motion to Accept Supplement were untimely, procedurally defaulted,

and/or meritless. (ECF No. 30)

On September 11, 2019, the Court issued a Memorandum and Order granting in part and

denying in part Petitioner's Motion to Accept Supplement. (ECF No. 42) The Court granted the

motion insofar as it related to his claim of ineffective assistance of counsel regarding Det.

Fourtney's testimony and trial counsel's advice not to testify.[9]  Regarding the collateral estoppel claim, the Court concluded that Petitioner was not entitled to relief because the conviction at issue occurred <u>before</u> his acquittal on Counts I and III.  The Court denied Petitioner's state law claim because it involved an issue of Missouri habeas corpus law, not federal law.  Finally, the Court denied Petitioner's claim that trial counsel improperly admitted his guilt during closing argument because that claim was filed after the one-year statute of limitations applicable to § 2254 proceedings and the factual predicate for such a claim had been available to Petitioner for years.

On October 16, 2019, upon Petitioner's request, the Court directed Respondent to produce a transcript of Det. Fourtney's 2018 trial testimony.  Respondent promptly procured and filed a transcript.  (ECF Nos. 43, 44, 45)[10]  In a pleading dated November 6, 2019, Petitioner filed a Motion to Clarify Ineffective of Assistance of Counsel Claim for Failing to Call Det. Fourtney as a Witness Due to Newly Obtained Evidence ("Motion to Clarify").  (ECF No. 46)

In his Motion to Clarify, Petitioner asserts that Det. Fourtney's 2018 trial testimony impeaches various aspects of Victim's testimony at his January 2011 retrial on Count II.  In particular, Petitioner contends that Det. Fourtney's testimony would have impeached Victim's testimony concerning the following matters:  (1) whether Victim only screamed once; (2) whether Victim actually saw a gun; (3) whether Victim was held at gun point the entire time of the sexual

---

[9] The undersigned found that Petitioner's claims regarding Det. Fourtney and trial counsel's advice not to testify were not new and rested on substantially the same facts as the initial petition.  (ECF No. 42 at 5)  To the extent Petitioner's Motion to Accept Supplement should have been construed as a motion to expand the record, it was not and that question is considered in connection with Petitioner's Motion to Clarify (ECF No. 46), which is discussed in greater detail herein.

[10] It appears that, because the September 2018 trial ended with an acquittal, a transcript was not prepared as a matter of course.

assault; and (4) the extent and nature of the sex acts involved in the sexual assaults. (ECF No. 46 at 6-7) The gist of Petitioner's Motion to Clarify is that the difference between his convictions and acquittals on Counts I and III is found in Det. Fourtney's testimony. Thus, per Petitioner, had Det. Fourtney testified at Petitioner's retrial on Count II, he would have been acquitted on that charge as well. (See ECF No. 46 at 3) Respondent argued that the record before this Court in this matter cannot be expanded to consider Det. Fourtney's 2018 testimony.

As will be explained below, Petitioner is not entitled to expand the record in this matter with Det. Fourtney's 2018 testimony. And even if that testimony is considered, it would not entitle Petitioner to relief in this federal habeas proceeding.

   **B.  Factual Background**

The following facts are taken from the state court record. At about 10:00 p.m. on August 5, 1988, as C.Z. ("Victim") returned from a walk in her St. Louis County neighborhood, a man approached her and started to walk in front of her. (EFC 14-1, Tr. at 193)[11] The man stopped in front of a mailbox and grabbed her from behind. (Id. at 192-93, 199) Victim screamed and then the man placed a gloved hand over her mouth. (Id. at 195-96, 224) Victim could not see the man's face because he was wearing a bandana; she did not recognize him or his voice. (Id. at 199-200) As Victim struggled, the man told her, "I've got a gun, if you don't cooperate I'll blow your head off." (Id. at 198, 200, 227) As Victim continued to struggle, hoping that a car would drive down the street, the man hit Victim on her head with a gun. (Id. at 198, 231) The man placed his gloved hand down her throat so Victim could no longer breathe, and he dragged her to a backyard where a second man, also wearing a bandana, was waiting. (Id. at 200-201)

---

[11] The transcript of the retrial on Count II was filed in two parts in this matter. (ECF No. 14-1, 14-2) For simplicity, it will be referred to herein as "Tr. page #."

The first man told the second man, "we've got to watch her, she is fighter."  (Id. at 201)  The first man handed the gun to the second man, removed Victim's jogging shorts and underwear, and vaginally raped her.  (Id. at 202, 204)  Victim testified that she did not know if the man had ejaculated.  (Id. at 206)  Victim testified that she did not say anything while being raped by the first man because the second man was holding a gun and she feared for her life.  (Id. at 205)  Next, the first man made Victim perform oral sex on him.  She did not remember whether the man ejaculated.  (Id. at 207)  Victim testified that each of these sexual assaults last about five minutes.  (Id.)  Next, the first man held the gun while the second man vaginally raped Victim.  (Id. at 208)  Victim did not scream because she feared that she would be shot.  Victim testified that she thought the assault by the second man lasted about five minutes, and she did not know whether he ejaculated.  (Id. at 208, 213)

The first man directed Victim to lie on her stomach but she refused and begged, "please, don't make me lie on my stomach."  (Id. at 209)  The men ordered Victim not to watch them leave and told her not to call the police.  (Id. at 209, 211)

After waiting some time, Victim put on her shorts and ran home and told her husband that she had been raped by two men at gunpoint and that they told her not to call the police.  (Id, at 209-11, 235)  Victim appeared to be in shock.  Her husband wanted to go to the police, but Victim refused to go because she feared the men were waiting outside or would return.  (Id. at 211-13, 234-40)  Victim and her husband eventually went to the police station even though she was scared that the men might see her leave the house.  (Id. at 212, 237)

Victim provided a statement to Det. Fourtney and then received treatment at a hospital, that included a sexual assault (rape kit) examination.  (Id. at 171-72, 213-14, 238, 245-46)  Victim reported that she was uncertain if the first man ejaculated during either vaginal intercourse or oral

sex and the second man ejaculated.  (Id. at 231-32)  Plaintiff testified that she did not know Petitioner.  (Id. at 222)

Nurse Deborah Brown testified that Victim came to the emergency room and reported that she had been dragged into the bushes and raped by two men.  (Id. at 243)  Nurse Brown testified that Victim believe one man ejaculated in her vagina but not in her mouth.  (Id. at 250)  Nurse Brown testified that Victim had a bruise on her upper forehead, forearm abrasions, and a grass stain on her shirt.  (Id. at 243)  The right side of Victim's mouth appeared "bruised or scraped," and she had abrasions on her upper back and buttocks.  (Id. at 243-44)  Nurse Brown further explained that, "[d]uring the exam it was obvious that [Victim] had some bruising and redness around the vaginal area.  There were also flecks of grass and dirt around the pubic hair."  (Id. at 244)  Nurse Brown also testified as to the process involved in performing a rape kit examination. (Id. 244-45)

Forensic testing eventually matched Petitioner's DNA to forensic samples collected on August 5 and 6, 1988, from a beer can found at the scene of the sexual assault and from Victim's underwear and body.  (Id. at 254, 258, 265-67, 291-94)[12]  On February 10, 2010, the State charged Petitioner with two Class A felony counts of aggravated forcible rape (Counts I and II) and one Class A felony count of aggravated forcible sodomy (Count III).

II.     **Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the Court's review of Petitioner's claims.  The Court's review is both "limited and deferential." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  Under the AEDPA, a federal court may not

---

[12] While the record does not include all of the details concerning the identification of Petitioner as a suspect, a cold case detective obtained a buccal swab sample from Petitioner in 2010.  (Id. at 270-71)

grant relief to a state prisoner's claim unless the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court." Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010) (citing 28 U.S.C. § 2254(d)), cert. denied, 565 U.S. 839 (2011). "A state court decision may be incorrect, yet still not unreasonable …." Id. (citation and quotation omitted) A federal court may grant habeas relief "only if the state court decision is both incorrect and unreasonable." Id.

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.'" Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). "A state court decision is an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle … but unreasonably applies that principle to the facts of the prisoner's case.'" Id. "Further, 'a determination of a factual issue made by a State court shall be presumed to be correct' in a federal habeas proceeding." Cole, 623 F.3d at 1187 (quoting 28 U.S.C. § 2254(e)(1)).

In reviewing state court proceedings under § 2254(d)(1) to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011); 28 U.S.C. § 2254(d)(2). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. Greene v. Fisher, 565 U.S. 34 (2011); accord Losh v. Fabian, 592 F.3d 820, 823 (8th Cir. 2010) ("Only rulings in [United States] Supreme Court

decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point.") (citations omitted).  The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Revels v. Sanders, 519 F.3d 734, 739 (8th Cir. 2008) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record."  Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004) (citation and internal quotations omitted).  Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The deference owed by a federal habeas court to a state court's finding of fact includes deference to state court's credibility determinations.  Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008) (en banc).  Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels.  Id. at 864-65.

Each of Petitioner's grounds allege claims of ineffective assistance of counsel.  For each claim, therefore, Petitioner must demonstrate both that counsel's performance was so deficient as to not function as the "counsel" guaranteed the defendant by the Sixth Amendment, and that he was prejudiced thereby.  See Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  Petitioner must prevail on both prongs of the Strickland standard in order to obtain relief.  See Worthington v. Roper, 631F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either Strickland prong is fatal to an ineffective-assistance claim.").

"Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." Bucklew, 436 F.3d at 1016 (citing Strickland, 466 U.S. at 689). Thus, "[u]nder Strickland, counsel's performance is 'measured against an objective standard of reasonableness,' and "hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgments.'" Id. (quoting Rompilla v. Beard, 545 U.S. 374, 380-81 (2005); see also Strickland, 466 U.S. at 689 (the courts seek "to eliminate the distorting effects of hindsight" by examining counsel's perspective at the time of the alleged error.).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

Strickland, 466 U.S. at 690-91.

Under Strickland, "[p]rejudice is shown by demonstrating that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." Id. (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). In order to prevail on the prejudice prong, Petitioner must show "that but for counsel's deficiency there is 'a reasonable probability that … the result of the proceeding would have been different.'" Lamar v. Graves, 326 F.3d 983, 985 (8th Cir. 2003) (quoting Strickland, 466 U.S. at 694). A reasonable probability is probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review," Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Pinholster, 563 U.S. at 202), cert. denied, 571 U.S. 839 (2013). "Under AEDPA, we must then give substantial deference

to the state court's predictive judgment [regarding <u>Strickland</u> prejudice].  So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the <u>Strickland</u> standard is unreasonable, not merely whether it is correct."  <u>Id.</u> (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011)).  "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'"  <u>Id.</u> (quoting <u>Harrington</u>, 562 U.S. at 102).  "If the state court 'reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions,' then federal review under AEDPA is at an end."  <u>Id.</u> at 832 (quoting <u>Premo v. Moore</u>, 562 U.S. 115, 131 (2011)).

## III.  <u>Analysis of Grounds Raised</u>

### A.  <u>Ground One – Failure to Investigate and Call Det. Fourtney</u>

In Ground One, Petitioner alleges that he received ineffective assistance of trial counsel because counsel failed to investigate and call Det. Fourtney to testify at his re-trial on Count II. The Missouri Court of Appeals split this ground into two claims—a failure to investigate claim and a failure to call claim.  <u>See</u> <u>Cusumano</u>, 495 S.W.3d at 235-36.  This Court will do the same.

#### 1)  <u>Failure to Investigate</u>

Petitioner argues that his trial attorney provided ineffective assistance of counsel by failing to investigate Det. Fourtney as a possible witness.  Respondent contends that Petitioner procedurally defaulted[13] the failure to investigate aspect of Ground One because he did not properly present his claim to the Missouri Courts.

---

[13] "Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism."  <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012).  Under the doctrine of procedural default, a federal habeas court may not review claims where "the prisoner had failed to meet a

Respondent relies on Barnett v. Roper, 541 F.3d 804 (8th Cir. 2008). In Barnett, the Eighth Circuit explained that, under Missouri law, a Rule 29.15 movant must allege facts, not mere conclusions. Id. at 808 (citing State v. Jones, S.W.2d 171, 180 (Mo. 1998) (en banc)). When a Rule 29.15 movant alleges a claim of ineffective assistance of counsel for failing to investigate or call a witness, the movant must allege specific facts in order to receive a hearing. Id. at 809 (citing State v. Dudley, 819 S.W.25 51, 56 (Mo. Ct. App. 1991)). Ultimately, the Eighth Circuit found that the movant in Barnett failed to comply with the procedural pleading requirements and, therefore, he was not entitled to an evidentiary hearing and his failure to investigate claim was defaulted. See id. at 810-11.

The Missouri Court of Appeals addressed Petitioner's failure to investigate claim as follows:

> When an ineffective assistance of counsel claim is based on an alleged failure to investigate a witness, the movant must allege what specific information counsel failed to discover; that reasonable investigation would have disclosed that information; and that the information would have improved movant's position…. [Petitioner] has failed to make any such allegations; all the information about which he asserted that he wished to have Detective Fourtney testify at trial was included in the detective's contributions to the 1988 police report about the assault, and counsel read and considered all of that information in deciding not to further investigate Detective Fourtney as a witness. This evidence from the record refutes [Petitioner's] claim that counsel failed to sufficiently investigate.

(ECF No. 14-12 at 5) Cusumano, 495 S.W.3d at 236.

The foregoing passage from the Missouri Court of Appeals arguably supports Respondent's contention that Petitioner failed to properly plead a failure to investigate claim in his Rule 29.15 motion. But that same language also supports a conclusion that the Missouri Court of

---

state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Still, "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 132 S. Ct. at 1316 (citing Coleman, 501 U.S. at 750).

Appeals reached the merits of the issue on the existing record. Thus, there is a plausible interpretation of the record supporting Respondent's contention that Petitioner defaulted his failure to investigate claim, and a plausible interpretation that he did not default that claim. But even concluding that Petitioner did not default the claim,[14] it falters under the "doubly deferential" standard of review applicable to ineffective assistance of counsel claims such as this.

Frist, the undersigned finds that the Missouri Court of Appeals applied the correct legal standard, namely Strickland.[15] Second, the Court finds that the decision of the Missouri Court of Appeals does not reflect an unreasonable application of the Strickland standard in the context of Petitioner's failure to investigate claim.[16] "A state-court decision is 'unreasonable' within the

---

[14] The undersigned believes that the better reading of the record is that Petitioner did not default his failure to investigate claim. Indeed, in other pleadings before this Court, Respondent argues that Petitioner's claim was decided on the merits. (See ECF No. 48 at 1) Unlike the situation in Barnett, Petitioner herein was granted a Rule 29.15 hearing and developed a record on his failure to investigate and failure to call claim. And the Missouri Court of Appeals addressed the merits of Petitioner's contention. Thus, the question of whether this issue is truly defaulted is murky. The Eighth Circuit has advised that, while procedural default issues should normally be examined first, a reviewing court may elect to address the merits when the merits are more readily resolved than the procedural issues. See Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) (en banc) (citations omitted).

[15] See Cusumano, 494 S.W.3d at 654 (applying Strickland standard to Petitioner's ineffective assistance of counsel claims). The Missouri Court of Appeals decision is also consistent with the Supreme Court's guidance that Strickland recognized "'the constitutionally protected independence of counsel and … the wide latitude counsel must have in making tactical decisions.'… [And that] '[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions.'" Pinholster, 563 U.S. at 195 (quoting Strickland, 466 U.S. at 688-89).

[16] "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "The reasonableness of a decision not to investigate is to be judged according to the circumstances of each case with great deference given to the attorney's decision." Beans v. Black, 757 F.2d 933, 936 (8th Cir. 1985). In analyzing the adequacy of a defense attorney's investigation, that attorney's performance is measured "against an 'objective standard of reasonableness,' … 'under prevailing professional norms,'" and "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, and by giving a 'heavy measure of

meaning of § 2254(d) only when it is 'so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Daniels v. Kelley, 881 F.3d 607, 611 (8th Cir. 2018) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).[17]  As the Missouri Court of Appeals explained –

> all the information about which [Petitioner] asserted that he wished to have Detective Fourtney testify at trial was included in the detective's contributions to the 1988 police report about the assault, and counsel read and considered all of that information in deciding not to further investigate Detective Fourtney as a witness. This evidence from the record refutes [Petitioner's] claim that counsel failed to sufficiently investigate.

Cusumano, 495 S.W.3d at 236.  In other words, the Missouri Court of Appeals found that trial counsel was aware of the information, investigated Det. Fourtney as a potential witness, but counsel declined to investigate him further.

As outlined above in the summary of the Rule 29.15 evidentiary hearing, trial counsel offered several good reasons why he elected not to further investigate Det. Fourtney.  First, trial counsel received and reviewed the police reports with Petitioner.  Thus, counsel was aware of the likely substance and impeachment value of Det. Fourtney's testimony.  Second, trial counsel was retained and he advised Petitioner that it would cost money to hire an investigator or depose Det. Fourtney.  Third, trial counsel was not provided funds for those expenses.  Fourth, trial counsel's

---

deference to counsel's judgments[.]'" Rompilla, 545 U.S. at 380-81 (quoting Strickland, 466 U.S. at 688-89, 691).

[17] "The 'unreasonable application' clause requires the state court decision to be 'objectively unreasonable,' which demands the decision to be more than incorrect or erroneous." Davis v. Grandlienard, 828 F.3d 658, 666 (8th Cir. 2016) (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)), cert. denied, 137 S. Ct. 1119 (2017).  This "standard is not satisfied be even clear error." Id. (citing Escobedo v. Lund, 760 F.3d 863, 869 (8th Cir. 2014)).  In fact, a state court application of federal law may be "erroneous or incorrect" in [a federal judge's] independent judgment without being 'objectively unreasonable.'" Id. (citing Engesser v. Dooley, 457 F.3d 731, 736 (8th Cir. 2006)).

practice was not to talk with a police officer such as Det. Fourtney unless it was in a deposition (i.e., under oath) or with an investigator present.

Detective Fourtney testified at the Rule 29.15 hearing that he would have to rely on his reports because he did not recall the specifics of the 1988 interview. Trial counsel's testimony established that he did, in fact, consider Det. Fourtney and was aware of his report. Counsel's testimony demonstrates that he made strategic decision not to investigate Det. Fourtney further as a trial witness. But even if trial counsel's decision not to <u>further</u> investigate Det. Fourtney could somehow be deemed constitutionally deficient, Petitioner suffered no prejudice because trial counsel was already aware of the contents of the report.

This Court finds that the Missouri Court of Appeals treatment of Petitioner's failure to investigate claim was not an "objectively unreasonable" application of the <u>Strickland</u> standard in this context. Nor does it reflect an "unreasonable determination of the facts in light of the evidence presented at the State court proceeding." § 2254(d)(2).

### 2) <u>Failure to Call Detective Fourtney to Testify at Trial</u>

The second part of Petitioner's Ground One is a contention that trial counsel was constitutionally ineffective in failing to call Det. Fourtney to testify at trial. The Missouri Court of Appeals found "that [Petitioner] failed to prove that trial counsel rendered ineffective assistance of counsel by failing to <u>call</u> Detective Fourtney as a witness at trial." <u>Cusumano</u>, 495 S.W.3d at 236. That court explained –

> A decision not to call a witness to testify, as a matter of trial strategy, is virtually unchallengeable. <u>Robinson v. State</u>, 469 S.W.3d 871, 880 (Mo.App.E.D.2015) (citing <u>Leisure v. State</u>, 828 S.W.2d 872, 875 (Mo.banc 1992)). To establish ineffective assistance of counsel based on the failure to call a witness, the movant must demonstrate that (1) trial counsel knew or should have known of the witness's existence; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense. <u>Id.</u> (citing <u>McDaniel v. State</u>, 460 S.W.3d 18, 29 (Mo.banc 2014)).

If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance. Id. (citing Worthington v. State, 166 S.W.3d 566, 577 (Mo.banc 2005)). Moreover, trial counsel's failure to call a particular witness solely to impeach another, without some greater purpose—such as to establish a specific defense—does not warrant post-conviction relief. Tucker v. State, 468 S.W.3d 468, 474 (Mo.App.E.D.2010).

Id.; (ECF No. 14-12 at 5-6)

The Missouri Court of Appeals further explained that –

Here, the record refutes any claim that Detective Fourtney's testimony would have produced a viable defense for [Petitioner] to Count II against him, which charged him with the class A felony of forcible rape based on the allegations that he, acting with another, knowingly and forcibly had sexual intercourse with Victim without her consent, and that in the course of committing the offense he subjected Victim to sexual intercourse with more than one person. [Petitioner's] sole argument is that the detective would have testified regarding his contributions to the 1988 police report, which included Detective Fourtney's paraphrasing of a statement by Victim about the assault against her, and that the detective's testimony as to Victim's statements in the report would have impeached her trial testimony – and there are reasons to believe it would not have done so, and would have failed to unqualifiedly support [Petitioner] – we fail to see how such impeachment would have established a viable defense for [Petitioner] to Count II. None of the alleged contradictions between Victim's trial testimony and her statements from 1988, as paraphrased by Detective Fourtney and never reviewed by Victim, establish any defense or raise any doubt whether [Petitioner] committed the class A felony of forcible rape as charged in Count II. And as stated above, the failure to call a witness for purposes of impeachment alone does not warrant post-conviction relief.

Cusumano, 495 S.W.3d at 236. The foregoing passages indicate that the Missouri Court of Appeals found that trial counsel's decision was not deficient and Petitioner showed no prejudice.

Again, there is no claim that the state courts applied an incorrect legal standard. Therefore, the only remaining question is whether the Court of Appeals decision involved an unreasonable application of the Strickland standard.

The testimony at the Rule 29.15 evidentiary hearing supports the Missouri Courts' decision. Trial counsel testified at that hearing and offered reasonable and strategic reasons for not calling Det. Fourtney. Petitioner retained trial counsel to represent him at the first trial and the

retrial on Count II. Trial counsel testified that he would have never called Det. Fourtney as a witness without either deposing him or having an investigator speak with him first, and that Petitioner did not pay him to hire an investigator or depose Det. Fourtney. Counsel further testified that he believed a retired police officer like Det. Fourtney would not have provided any evidence to support Petitioner. Similarly, trial counsel testified that as a matter of strategy,[18] it was more likely that, had Det. Fourtney testified, his testimony would have been more favorable to the prosecution than the defense.

Det. Fourtney also testified at the Rule 29.15 evidentiary hearing and it was very clear that any testimony would have been based on information in the police reports.

The Missouri Court of Appeals concluded that any contradictions between Victim's trial testimony and her statements from 1988, which Det. Fourtney paraphrased in his reports, would not have established a defense or raised any doubt regarding Count II. There is no basis for a federal court on habeas review to second-guess that conclusion. Therefore, the Court finds that the Missouri Court of Appeals thoroughly and adequately explained its reasoning and that reasoning does not reflect an objectively unreasonable application of the law nor an unreasonable determination of the facts.

### 3) Petitioner's Motion to Clarify Ground One

The foregoing conclusions regarding both aspects of Ground One would not change even upon consideration of Det. Fourtney's testimony at the retrial on Count II. To the extent that such testimony provides a glimpse into how Det. Fourtney might have testified had he been called to

---

[18] "The decision not to call a witness is a virtually unchallengeable decision of trial strategy." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (internal quotations omitted); see also Worthington v. State, 166 S.W.3d 566, 577 (Mo. banc 2005) ("As a matter of trial strategy, the determination not to call a witness is virtually unchallengeable.").

do so in 2011, it does not provide a basis to use hindsight and second-guess the Missouri Court of Appeals decisions on the issue of whether trial counsel was ineffective in failing to investigate and call Det. Fourtney. See, e.g., Strickland, 466 U.S. at 689 (explaining that hindsight is discounted by focusing on counsel's conduct at the time decisions are made).

As noted in the Procedural Background above, this matter has a complicated procedural history. In January 2017, after exhausting his claims in the Missouri courts, Petitioner filed the instant § 2254 petition—which focuses solely on his January 2011 conviction on Count II. In September 2018, he was retried and acquitted on Counts I and III. Det. Fourtney testified at the September 2018 trial but not at the January 2011 trial. On October 16, 2019, upon Petitioner's request, the Court directed Respondent to produce a transcript of Det. Fourtney's trial testimony. Respondent filed a transcript on October 23, 2019. (ECF Nos. 43, 44, 45) Thereafter, Petitioner filed a Motion to Clarify Ineffective of Assistance of Counsel Claim for Failing to Call Det. Fourtney as a Witness Due to Newly Obtained Evidence ("Motion to Clarify"). (ECF No. 46)

In his Motion to Clarify, Petitioner asserts that Det. Fourtney's 2018 trial testimony impeaches various aspects of Victim's testimony at the January 2011 retrial on Count II. In particular, Petitioner contends that Det. Fourtney's testimony would have impeached Victim's testimony concerning the following matters: (1) whether Victim only screamed once; (2) whether Victim actually saw a gun; (3) whether Victim was held at gun point the entire time of the sexual assault; and (4) the extent and nature of the sex acts involved in the sexual assaults. (ECF No. 46 at 6-7) The gist of Petitioner's Motion to Clarify is that the difference between his convictions and acquittals on Counts I and III is found in Det. Fourtney's testimony. Thus, per Petitioner, had Det. Fourtney testified Petitioner's retrial on Count II, he would have been acquitted on that charge as well. (See ECF No. 46 at 3)

Respondent argues that the habeas record in this Court should not be expanded to include Det. Fourtney's 2018 trial testimony because Petitioner's ineffective assistance of counsel claim was decided on the merits in state court, after a post-conviction evidentiary hearing where Det. Fourtney testified and his police report was admitted as an exhibit. Respondent also argues that, even if Det. Fourtney's 2018 trial testimony is properly before the Court, trial counsel was not ineffective for not calling Det. Fourtney because his testimony was either consistent with Victim's testimony or immaterial.

Rule 7 of the Rules Governing Habeas Corpus under Section 2254 provides the general requirements for allowing a party to expand the record in a § 2254 proceeding. Normally, in order to introduce evidence and expand the record pursuant to Rule 7, a petitioner must meet the requirements of 28 U.S.C. § 2254(e)(2). See Mark v. Ault, 498 F.3d 775, 788 (8th Cir. 2007) (citations omitted). Under § 2254(e)(2), "[a] habeas petitioner must develop the factual basis of his claim in the state court proceedings rather than in a federal evidentiary hearing unless he shows that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts." Id. (quoting Cox v. Berger, 398 F.3d 1025, 1030 (8th Cir. 2005)). A § 2254 petitioner must also show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Although 28 U.S.C. § 2254(e)(2) is directed to evidentiary hearings in habeas proceedings, courts have applied the same analysis to requests to take discovery and expand the record. See Mark, 498 F.3d at 778. "Federal courts may conduct evidentiary hearings and supplement the state record only in extraordinary circumstances because of the obligation to defer to state court's factual determinations." Hall v. Luebbers, 296 F.3d 685, 700 (8th Cir. 2002). See also Pinholster, 563

U.S. at 181 (holding "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

In his Motion to Clarify, Petitioner never specifically requested leave to expand the record. Although the Court entered an order on November 27, 2019, permitting Petitioner to reply to Respondent's opposition to his Motion to Clarify, Petitioner did not seek, nor did the Court address, whether the record should be expanded to permit this Court to consider Det. Fourtney's 2018 trial testimony or the outcome of the 2018 trial in ruling on the instant federal habeas petition.

To the extent Petitioner's Motion to Clarify seeks to expand the record outside of the state court proceedings concerning Count II, he has not satisfied the requirements of § 2254(e)(2). It is not disputed that Det. Fourtney's 2018 testimony was not available at the time of his state court proceedings. Therefore, he could not have discovered it by due diligence. In order to succeed under § 2254(e)(2), however, Petitioner must also "show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." Id. (quoting Perry v. Kemna, 356 F.3d 880, 889 (8th Cir. 2004)). The Court finds that Petitioner cannot meet that burden.

Detective Fourtney testified at Petitioner's Rule 29.15 evidentiary hearing after his conviction on Count II and his supplemental report was admitted as an exhibit. Petitioner's post-conviction counsel had the opportunity to question Det. Fourtney regarding any discrepancies between the police report and Victim's testimony at the January 2011 retrial on Count II. Even with the opportunity to develop a fairly detailed record as to what Det. Fourtney's testimony would have been, the Missouri Court of Appeals denied Petitioner's ineffective assistance of counsel claim regarding Det. Fourtney.

The distinctions between Det. Fourtney's testimony at the Rule 29.15 motion hearing and his later testimony at the September 2018 trial are not significant and do not rise to the level of clear and convincing evidence that, had Det. Fourtney testified at the January 2011 retrial of Count II, the result would have been different. In fact, his testimony at the September 2018 trial was limited and less extensive than the information in his reports and his testimony at the Rule 29.15 motion hearing.

Therefore, the undersigned denies Petitioner's Motion to Clarify to the extent he asks the Court to expand the record to include Det. Fourtney's 2018 trial testimony.

But even giving Petitioner every benefit of the doubt and the most liberal interpretation reasonable, the arguments he raises in his Motion to Clarify do not entitle him to any relief pursuant to Ground One. The premise of Petitioner's argument is that the primary difference between the outcome of his 2011 retrial on Count II and his 2018 retrial on Counts I and III was Det. Fourtney's testimony.

First, the record does not support Petitioner's premise because there were other, substantial differences between the 2011 and 2018 trials. For example, Victim testified at the 2011 retrial on Count II but was not available to testify at the 2018 retrial on Counts I and III.[19] That is a significant difference that cannot be discounted. Also, as noted above, Det. Fourtney's testimony at the Rule 29.15 hearing was <u>more</u> extensive than his testimony at the September 2018 retrial, yet the Missouri Courts denied post-conviction relief with the benefit of the more extensive testimony. That decision is entitled to AEDPA deference. Further, while both trials focused on the same operative set of facts, they were conducted more than seven years apart and involved different

---

[19] It appears from the transcript of Det. Fourtney's 2018 trial testimony that the State relied on a transcript of Victim's prior testimony. (<u>See</u> ECF No. 45-1 at 54)

charges, different juries ,and different trial strategies.  With these distinctions in mind, Petitioner's contention that Det. Fourtney's testimony was somehow the linchpin of his defense is not factually accurate and does not give this Court any reason to reconsider the Missouri Court of Appeals decision.

Second, it is not disputed that the value of Det. Fourtney's testimony to the defense was limited to impeaching some of Victim's testimony.  The undersigned finds that even assuming Det. Fourtney's trial testimony impeached some details, it did not undercut not the essence of Victim's testimony—that she was attacked and raped by two men.

The record at the retrial of Count II demonstrated that Victim reported her rape to both the police and the nurse who examined her that evening.  Victim described being grabbed and dragged before being raped.  As recounted in the factual background above, the nurse testified at trial that Victim had a grass stain on her clothes, and abrasions or bruises on her head, arm, back, buttocks, and mouth areas.  The nurse testified Victim's vaginal area was bruised and she had dirt and grass in her pubic area.  The nurse testified that Victim believed one of the rapists ejaculated in her vaginal area but not in her mouth.  There is no dispute that Petitioner was connected to the rape by DNA evidence taken from Victim and from the scene.

Therefore, even if the record is supplemented with Det. Fourtney's 2018 trial testimony, that testimony would not be substantially different than his testimony at the Rule 29.15 hearing.  The Missouri Court of Appeals considered the Rule 29.15 testimony in finding that none of the alleged differences between Victim's statements to Det. Fourtney in 1988 and her testimony in 2011 would have established a defense or raise a doubt as to Petitioner's guilt with respect to Count II.  Stated simply, the transcript of Det. Fourtney's 2018 trial testimony adds no new facts to support Petitioner's Ground One and this Court is not permitted to use the outcome of Petitioner's

retrial on Counts I and III in 2018 to second-guess trial counsel's decisions in 2011. See Strickland, 466 U.S. at 689.

Given the State's evidence of guilt at trial was so compelling, Petitioner has failed to demonstrate a reasonable probability of a different outcome. Thus, even if one were to presume that trial counsel was deficient in failing to investigate and/or call Det. Fourtney at the January 2011 retrial of Count II, Petitioner cannot show any Strickland prejudice flowing from such a presumed deficiency.

### B. Ground Two – Failure to Object to Victim Impact Testimony

In Ground Two, Petitioner alleges that he received ineffective assistance of trial counsel because counsel failed to object to Victim's ex-husband's testimony during the guilt phase. Her ex-husband testified as to changes in Victim's behavior after she was raped. Respondent contends that this ground must be denied for two reasons. First, Petitioner's trial counsel objected to this testimony. Thus, the factual predicate for Ground Two fails. Second, Petitioner can show no prejudice because the State Courts concluded that the ex-husband's testimony was admissible.

In his rebuttal to Respondent, Petitioner does not actually address the record or the specific issue he raised in his § 2254 petition. Instead of focusing on his ineffective assistance of counsel claim, he argues that neither Victim nor her ex-husband should have been permitted to give victim impact testimony during the guilt phase of his trial.

In his § 2254 petition to this Court, Petitioner's only claim concerning victim impact testimony was that his trial attorney rendered ineffective assistance by failing to object to the ex-husband's victim impact testimony. He did  not allege any independent trial court error (e.g., due

process) with respect to Victim's own testimony or her ex-husband's testimony.[20]  Similarly, he did not allege any claim that his attorney was ineffective with respect to Victim's own testimony. Accordingly, this Court will only review the limited question properly before it—whether Petitioner's trial attorney rendered ineffective assistance of counsel in failing to object to the ex-husband's so-called victim impact testimony.

Petitioner unsuccessfully raised this same ineffective of counsel issue in his 29.15 motion and the Missouri Courts addressed it under a Strickland rubric.  As noted by the Missouri Court of Appeals, the record shows that trial "counsel actually *did* object to this testimony and received a continuing objection to it."  Cusumano, 495 S.W.3d at 237.  The trial transcript supports this conclusion.[21]  Thus, the record conclusively demonstrates that trial counsel cannot be found to have performed deficiently because he made the very objection Petitioner thinks he should have made.  Further, as the Missouri Court of Appeals also noted, the ex-husband's testimony was relevant and admissible.  See id. ("Victim's ex-husband's testimony was highly probative and relevant at least as to whether the sexual assault occurred, that two men forced Victim to engage in sexual intercourse, and that the men used force in the form of a firearm.").  Therefore, even if somehow trial counsel acted deficiently in this regard, Petitioner has demonstrated no prejudice.

Petitioner's Ground Two must be denied.  The Missouri Courts adequately addressed this issue in Petitioner's Rule 29.15 proceedings.  The Missouri Courts' decision was neither contrary to, nor an unreasonable application of, federal law.

---

[20] The issue of Victim's own impact testimony was unsuccessfully raised in Petitioner's direct appeal of his conviction on Count II.  See Cusumano, 399 S.W.3d at 916-17.

[21] Trial counsel objected to this testimony based on relevance.  The trial court overruled his objection and granted a continuing objection to the relevance of the ex-husband's testimony.  (Tr. at 235; ECF No. 14-2 at 35)

## C.  **Ground Three – Advising Petitioner Not to Testify**

In Ground Three, Petitioner alleges that he received ineffective assistance of trial counsel because his counsel advised him not to testify.  In particular, he alleges that his counsel advised him not to testify "because any discrepancies in [his] testimony would be used against him if the direct appeal [on Counts I and III] ruled in his favor and he [received] another trial."  (ECF No. 1-2 at 10)  Petitioner contends that such advice was without merit because his direct appeal on Counts I and III raised statute of limitations issues that, if successful, would have resulted in a dismissal, not a new trial.  (See id.; see also ECF No. 15 at 9)

Petitioner also represents that he would have testified at his retrial on Count II but for his attorney's poor advice.  More specifically, Petitioner argues that the entire "case was a matter of [his] word against [Victim's] word, there was no other physical evidence other than [his] DNA and [Victim] saying she was sexually assaulted."  (ECF No. 15 at 9)  Petitioner further represents that, had he testified, he would have testified "that the sex was [consensual], and there was no gun, and no second person.  The whole thing was a date that turned into a violent argument."  (Id.) Petitioner acknowledges that he made mistakes and opened the door to damaging evidence when he testified at his first trial, but he contends that he would not have made the same mistakes if he testified again.  (Id.)

 Respondent argues that Petitioner has failed to satisfy the test articulated in Strickland, and therefore this ground lacks merit.

A criminal defendant has a federal constitutional right to testify on his own behalf at his criminal trial.  Rock v. Arkansas, 483 U.S. 44, 51-52 (1987).  "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right," and that waiver must be made voluntarily and knowingly.  United States v. Bernloehr, 833 F.2d 749,

751 (8th Cir. 1987). Although the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice concerning that right. Jackson v. State, 205 S.W.3d 282, 286 (Mo. Ct. App. 2006). Where a state court's finding of the attorney's advice regarding the right to testify and of the acceptance of counsel's advice are clearly supported by the record, a federal habeas court should "not second guess them." Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998). A trial counsel's advice not to testify is not deemed ineffective assistance of counsel if it might be considered trial strategy. See Johnson v. Lockhart, 921 F.2d 796, 800 (8th Cir. 1990); Drake v. Wyrick, 640 F.2d 912, 915 (8th Cir. 1981).

As recounted in the procedural history above, at the Rule 29.15 motion hearing, trial counsel outlined his reasons for advising Petitioner not to testify. Counsel explained that he advised Petitioner not to testify at the first trial, yet Petitioner did not follow that advice and performed poorly. Counsel also explained that he believed any arguably inconsistent testimony Petitioner gave could be used against him if Petitioner were to be retried on Counts I and III.

The Rule 29.15 court found Petitioner's claim to be meritless because Petitioner showed no prejudice. In particular, the court opined that "[Petitioner] does not allege that he would have provided any *additional* evidence that would have corroborated his story or provided any other defense. It is purely speculative that a second jury would have believed [Petitioner's] story, given the state's evidence in this case was so compelling. [Petitioner] has failed to show the actual prejudice required by Strickland." (ECF No. 14-8 at 40) (emphasis in original).

The Missouri Court of Appeals affirmed the denial of this claim. The Missouri Court of Appeals' decision focused on trial counsel's strategic assessment based on Petitioner's poor performance in the first trial. Specifically, the Missouri Court of Appeals determined:

> Reasonably competent advice by counsel regarding whether to testify is generally a matter of trial strategy that, barring exceptional circumstances, is not a

basis for post-conviction relief. Here, [Petitioner] failed to prove that counsel's advice to him not to testify at the second trial was unreasonable and prejudicial. The record shows that counsel advised [Petitioner] not to testify at his second trial because counsel had seen him testify poorly at the first trial – which involved the same prosecutor – and because testifying in the second trial would put him at risk of contradicting his former testimony.

Counsel testified at the motion hearing that he explained to [Petitioner] that there was a strategy involved in advising him not to testify at the second trial. Counsel testified that [Petitioner's] testimony at the first trial "did not go well for him" because the prosecutor had [Petitioner] so "unnerved" on cross-examination that [Petitioner] opened the door to the impeachment of his character by the State. Against counsel's advice to avoid opening the door to character evidence, [Petitioner] revealed on cross-examination that the reason he was upset to find out, after his sexual contact with the Victim, that she was married was that "he was a good Catholic and he would never have had a sexual relationship with a married woman, if he had known." Counsel stated that if [Petitioner] had told him this part of the story prior to trial, counsel would have told him to leave it out of his testimony, since it would likely – and actually did – open the door to character evidence.

Especially in light of the fact that counsel warned [Petitioner] that the same prosecutor would cross-examine him at the second trial if [Petitioner] were to testify, we cannot say that counsel's advice to [Petitioner] not to testify was unreasonable and prejudicial. The record shows that [Petitioner] made at least one critical error while testifying at his first trial, and that if he had testified at his second trial he would have run an additional risk. These are not exceptional circumstances required for us to question counsel's advice not to testify.

(ECF No. 14-12 at 8-9) (internal citations omitted)

The appellate court's determination that counsel's decision advising Petitioner to not testify was a reasonable trial strategy given the high risk of contradicting his former testimony and that the same prosecutor would cross-examine him was not an unreasonable application of <u>Strickland</u>. <u>See</u> 28 U.S.C. 2254(d)(1). Counsel had a valid strategic reason to advise Petitioner against testifying.[22] As the appellate court's determination also did not involve an unreasonable

_____

[22] On the record before this Court, there is no reason to consider Petitioner's contention that trial counsel was wrong in believing Petitioner might receive a retrial (as opposed to an outright dismissal) of Counts I and III following his direct appeal.

determination of the facts in light of the evidence presented in the state court proceedings, see 28 U.S.C. §2254(d)(2), the decision is entitled to deference.

### D. Ground Four – Failure to Support Double Jeopardy Argument on Direct Appeal

In Ground Four, Petitioner argues that he received ineffective assistance of appellate counsel because his counsel failed to cite Green v. United States, 355 U.S. 184 (1957) and Price v. Georgia, 398 U.S. 323 (1970) in support of his claim that his conviction on Count II should be set aside based on double jeopardy grounds.[23]

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). The proper standard, however, remains Strickland—Petitioner must show that his appellate attorney's performance fell below the reasonable standard of competence and that performance was prejudicial. Strickland, 466 U.S. at 687. As to the performance element, appellate attorneys are expected to winnow the issues on appeal to highlight the most meritorious issues. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983). For the prejudice element, Petitioner "must show a reasonable probability that, but for his counsel's unreasonable [conduct], he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. 259, 285 (2000). As with an ineffective assistance of

_____

[23] Petitioner requested that this Court "stay and abey" Ground Four because his convictions on Counts I and III had been remanded for retrial. (ECF Nos. 1-2 at 10; 15 at 11-12) After he was acquitted of Counts I and III following his retrial, Petitioner argued that a collateral estoppel claim regarding Count II became ripe. (ECF No. 19 at 7) As explained elsewhere in this Memorandum and Order, the undersigned previously denied Petitioner's request to supplement his § 2254 petition with a collateral estoppel argument. (ECF No. 42 at 7-8) It is important to focus on the actual ground that was timely raised before this Court, which is an ineffective assistance of appellate counsel claim, and it is not that counsel failed to raise an issue, but that the issue was imperfectly raised because counsel did not cite specific Supreme Court precedent. Petitioner did not raise a free-standing collateral estoppel or double jeopardy claim in his § 2254 petition. Because his ineffective assistance of appellate counsel argument was fully exhausted in the Missouri courts, there was no need to stay and abey his Fourth Ground.

trial counsel claim, the Court may resolve an ineffective assistance of counsel claim by finding either no prejudice or no deficient performance and, if either element is not satisfied, the Court does not need to address the other element.  Id. at 286 n. 14.

Petitioner appealed his conviction on Count II to the Missouri Court of Appeals.  State v. Cusumano, 399 S.W.3d 909 (Mo. Ct. App. 2013).  He relied on a public defender in that appeal. His public defender raised a double jeopardy / collateral estoppel argument but acknowledged that the issue had not been preserved at trial.  Applying a plain error standard of review, the Missouri Court of Appeals affirmed the conviction on Count II, noting that collateral estoppel "does not even begin to come into play unless the defendant has been acquitted in the first trial."  Id. at 915 (internal quotation omitted).  The court explained that, at the first trial, a jury returned verdicts finding Petitioner guilty of the lesser offenses of forcible rape and forcible sodomy in Counts I and III, but in finding him guilty of the lesser offenses, that jury did not necessarily find him not guilty of the conduct charged in Count II (the charge the jury did not reach a verdict on in the first trial). Consequently, the court opined that first jury did not "'unambiguously determine[]' that (1) [Petitioner] did not act with another in committing the charged offenses and (2) neither [Petitioner] nor another displayed a deadly weapon in a threatening manner.  [The court] therefore conclude[d] that collateral estoppel did not bar [the later] prosecution of Count II for forcible rape under a theory of accomplice liability."  Id.

After losing his direct appeal following his conviction on Count II, Petitioner filed a Rule 29.15 motion alleging that his appellate counsel was ineffective in raising a double jeopardy argument because appellate counsel failed to cite Green v. United States, 355 U.S. 184 (195y) or Price v. Georgia, 398 U.S. 323 (1970).  Appellate counsel testified at the Rule 29.15 evidentiary hearing, explaining that she believed she presented the best issues available.  The Rule 29.15

motion court denied post-conviction relief on this ground, finding that Petitioner showed neither a breach of duty nor any resulting prejudice. The Rule 29.15 court further explained why neither Supreme Court decision was controlling or persuasive because the jury did not convict him on Count II during the first trial. (ECF No. 14-8 at 238-39)

The Missouri Court of Appeals affirmed the Rule 29.15 motion court. See Cusumano, 495 S.W.3d at 238-40. The Missouri Court of Appeals concluded that neither Supreme Court case Petitioner relied upon—Green and Price—applied to his case. Id. at 239.[24] The Missouri Court of Appeals specifically found that citing Green and Price would have been unpersuasive. Id. Therefore, appellate counsel could not be ineffective for failing to cite those cases on appeal.

Petitioner's Ground Four must be denied. The Missouri Courts adequately addressed this issue in Petitioner's Rule 29.15 proceedings. The Missouri Court of Appeals' decision was neither contrary to, nor an unreasonable application of, federal law. See, e.g., Rodriguez v. United States, 17 F.3d 225 (8th Cir. 1994) (failure to make a meritless argument cannot, as a matter of law, constitute ineffective assistance of counsel); see also Yeager v. United States, 557 U.S. 110, 118 (2009) (retrial after a hung jury mistrial does not violate the constitutional prohibition of double jeopardy).

## IV.    Conclusion

The undersigned concludes that Petitioner is not entitled to federal habeas relief on the

---

[24] The Missouri Court of Appeals explained that Price and Green rest on two premises that did not apply under Missouri law, namely that an acquittal on a lesser included charge implies an acquittal on the greater charge, and, therefore, jeopardy on the greater charge ended when the jury opted to convict on the lesser included charge. Cusumano, 495 S.W.3d at 239. The Missouri Court of Appeals explained that Missouri was not an acquit first jurisdiction and, therefore, the jury did not necessarily find Petitioner not guilty on the greater conduct charged in Counts I and III when he was originally convicted on the lesser included version of those counts. Id. There was no lesser included instruction offered regarding Count II at the first trial. Id. at 239-40

grounds presented to this Court. Petitioner has failed to establish that his state court proceedings were contrary to, or involved an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts presented in those proceedings. See 28 U.S.C. § 2254(d). Further, Plaintiff has failed to make a substantial showing of the denial of a constitutional right sufficient to justify the issuance of a Certificate of Appealability.

IT IS HEREBY ORDERED that Petitioner Rick Cusumano's pro se Petition under 28 U.S.C. § 2254 [ECF No. 1] is DENIED.

IT IS FURTHER ORDERED that Petitioner's Motion to Clarify [ECF No. 46] is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability will be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability).

A separate Judgment will accompany this Memorandum and Order.

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dates this 17th day of March, 2020